Recording Requested By/Return To:
**NATIONSTAR MORTGAGE LLC**
**D/B/A MR. COOPER**
**999 TECH ROW, #200**
**MADISON HEIGHTS, MICHIGAN**
**48071**
**888-480-2432**

This Instrument Prepared By:
**NATIONSTAR MORTGAGE LLC**
**D/B/A MR. COOPER**
**8950 CYPRESS WATERS BLVD.**
**COPPELL, TX 75019**

**Parcel Identification Number:**

████████

——————————————— [Space Above This Line For Recording Data] ———————————————

**Document Date:** ████████

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

 **Property Address: 376 WILLOW
HEDGE DR, MONROEVILLE,
PENNSYLVANIA 15146**

**Loan Number** ████████
**Primary VA Guaranteed Loan No.** ████

   This Loan Modification Agreement ("Agreement"), effective on **1ST DAY OF JUNE, 2022**, between **JEROME D BOYD AKA JEROME DONALD BOYD** ("Borrower"), and **NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER** ("Lender"), whose address is **8950 CYPRESS WATERS BLVD., COPPELL, TX 75019** amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **MARCH 27, 2015** and recorded in **RECORDED DATE : 04/01/2015 BOOK : 44948 PAGE : 217 INSTRUMENT NUMBER : 2015-21481** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

### 376 WILLOW HEDGE DR, MONROEVILLE, PENNSYLVANIA 15146
(Property Address)

the real property described being set forth as follows:
**LEGAL DESCRIPTION:**
**ALL THAT CERTAIN LOT OR PIECE OF GROUND SITUATE IN THE MUNICIPALITY OF MONROEVILLE, COUNTY OF ALLEGHENY AND COMMONWEALTH OF PENNSYLVANIA, BEING LOT NO. 24 IN THE WILLOW HEDGE PLAN OF LOTS AS THE SAME IS RECORDED IN THE DEPARTMENT OF REAL ESTATE OFFICE OF ALLEGHENY COUNTY, PENNSYLVANIA IN**

**LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT      Form 3179   1/01
(rev. 4/14)**

*(page 1 of 10)*

**Loan Number**

**PLAN BOOK VOLUME 93, PAGES 112-114. BEING THE SAME PREMISES WHICH ROBERT W. AMEN AND KEIGHTLEY J. AMEN, HUSBAND AND WIFE, BY DEED DATED 06/17/2009 AND RECORDED 06/22/2009 IN THE DEPARTMENT OF REAL ESTATE OFFICE OF ALLEGHENY COUNTY IN DEED BOOK VOLUME 13960, PAGE 479, GRANTED AND CONVEYED UNTO ROBERT W. AMEN AND KEIGHTLEY J. AMEN, HUSBAND AND WIFE AS TENANTS BY THE ENTIRETY.**

Modification Effective Date: **JUNE 01, 2022**
Original Mortgage Amount: **$229,500.00**

**Tax Parcel No.:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **JUNE 01, 2022**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$276,716.74**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.2500%** from **MAY 01, 2022**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,361.28**, beginning on the **1ST DAY OF JUNE, 2022**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **4.2500%** will remain in effect until principal and interest are paid in full. If on **MAY 01, 2052**, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. The terms in this paragraph shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however,

**Loan Number**

the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b)   all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.   Borrower understands and agrees that:

(a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)   If permitted by applicable law, all costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)   Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)   Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower's information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or

**LOAN MODIFICATION AGREEMENT**—Single Family—**Fannie Mae UNIFORM INSTRUMENT**       Form 3179   1/01
(rev. 4/14)

*(page 3 of 10)*

**Loan Number**

foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

☐ By checking this box, Borrower also consents to being contacted by text messaging.

(g)     Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender,

**LOAN MODIFICATION AGREEMENT**—Single Family—**Fannie Mae UNIFORM INSTRUMENT**      Form 3179   1/01
(rev. 4/14)

*(page 4 of 10)*

**Loan Number**

Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

(h)   In any foreclosure action dismissed as a result of entering into this Agreement, Borrower will remain liable for and bear his or her own attorney fees and costs incurred in connection with such action, if permitted by applicable law.

(i)   The mortgage insurance premiums on Borrower's Loan may increase and the date on which Borrower may request cancellation of mortgage insurance may change as a result of the loan modification.

(j)   Any Borrower who co-signed the Security Instrument but did not execute the Note (a "Co-signer") and has not assumed the debt: (a) is co-signing this Agreement only to acknowledge the Agreement; (b) is not personally obligated to pay the sums secured by the Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Security Instrument or the Note without the Co-signer's consent.

6. If Borrower is a Debtor in an active bankruptcy proceeding, Court and/or Bankruptcy Trustee approval of this modification agreement may be required depending upon jurisdictional requirements. If Court and/or Bankruptcy Trustee approval of the modification is required, the modification agreement will not be effective unless evidence of the required approval is provided.

LOAN MODIFICATION AGREEMENT—Single Family—**Fannie Mae UNIFORM INSTRUMENT**        Form 3179   1/01
(rev. 4/14)

*(page 5 of 10)*

Loan Number

7. Borrower will pay to Lender on the day payments are due under the Loan Documents as
amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for
payment of amounts due for: (a) taxes and assessments and other items which can attain
priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments
or ground rents on the Property, if any; (c) premiums for any and all insurance required by
Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums
payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with
the Loan Documents; and (e) any community association dues, fees, and assessments that
Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall
promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower
shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to
pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to
Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing.
In the event of such waiver, Borrower shall pay directly, when and where payable, the
amounts due for any Escrow Items for which payment of Funds has been waived by Lender
and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such
time period as Lender may require. Borrower's obligation to make such payments and to
provide receipts for all purposes be deemed to be a covenant and agreement contained
in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan
Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and
Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under
the Loan Documents and this Agreement and pay such amount and Borrower shall then be
obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all
Escrow Items at any time by a notice given in accordance with the Loan Documents, and,
upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are
then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to
apply the Funds at the time specified under the Real Estate Settlement Procedures Act
("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA.
Lender shall estimate the amount of Funds due on the basis of current data and reasonable
estimates of expenditures of future Escrow Items or otherwise in accordance with applicable
law.

The Funds shall be held in an institution whose deposits are insured by a federal agency,
instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so
insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow
Items no later than the time specified under RESPA. Lender shall not charge Borrower for
holding and applying the Funds, annually analyzing the escrow account, or verifying the
Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits
Lender to make such a charge. Unless an agreement is made in writing or applicable law
requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any
interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that
interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual
accounting of the Funds as required by RESPA.

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT        Form 3179   1/01
(rev. 4/14)

**Loan Number**

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

**LOAN MODIFICATION AGREEMENT**—Single Family—**Fannie Mae UNIFORM INSTRUMENT**   Form 3179   1/01
(rev. 4/14)

*(page 7 of 10)*

**Loan Number** ████████

In Witness Whereof, the Borrower(s) have executed this agreement.

Borrower - **JEROME D BOYD AKA JEROME DONALD BOYD**

Execution Date: 04 / 22 / 22

State of **PENNSYLVANIA**
County of _Allegheny_
**Enter County Here**

On this, the _22nd_ day of _APRIL_, _2022_, before me,
the undersigned officer, personally appeared **JEROME D BOYD AKA JEROME DONALD BOYD**, known to me
(or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and
acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seals.

Place Seal Below

Commonwealth of Pennsylvania - Notary Seal
JAMES F BULLS - Notary Public
Allegheny County
My Commission Expires December 17, 2025
Commission Number 1317068

Notary Signature

_James F Bulls_
Notary Printed Name

Title of Officer:  Notary Public

My Commission Expires: 12/17/25

[ ] This notarial act involved the use of communication technology.

LOAN MODIFICATION AGREEMENT—Single Family—**Fannie Mae UNIFORM INSTRUMENT**
(rev. 4/14)

Form 3179   1/01

*(page 8 of 10)*

Loan Number [REDACTED]

In Witness Whereof, the Lender has executed this Agreement.

Lender

**NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER**

By: _____

Printed Name:        Karren Bates
                     Vice President

Title: _____

                  APR 2 8 2022

Execution Date: _____

**LOAN MODIFICATION AGREEMENT**—Single Family—**Fannie Mae UNIFORM INSTRUMENT**        **Form 3179    1/01**
(rev. 4/14)

*(page 9 of 10)*

**Loan Number** ▮▮▮▮▮

State of MICHIGAN
County of OAKLAND

Acknowledged by _____ **Karren Bates** _____ , Vice President of Nationstar
Mortgage LLC d/b/a Mr. Cooper a Limited Liability Corporation before me on the _28_ day of
_____ ____, 2022

Signature _____

Printed name _____ T HOUSWORTH _____

Notary public, State of MICHIGAN, County of _____ Oakland _____

My commission expires _____ MAY 2 8 2028

Acting in the County of OAKLAND

> T HOUSWORTH
> Notary Public, State Of Michigan
> County of Oakland
> My Commission Expires May 28, 2028
> Acting in the County of ____ Oakland

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT      Form 3179   1/01
(rev. 4/14)

*(page 10 of 10)*

## DOCUMENT CORRECTION AGREEMENT
("Agreement")

Loan Number:          (the "Loan")

**AGREEMENT TO CORRECT MISSTATED DOCUMENTS AND TO PROVIDE ADDITIONAL DOCUMENTATION**: In consideration of NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER providing the loan modification (the "Workout") as requested by the undersigned ("Borrower"), and regardless of the reason for any loss, misplacement, or inaccuracy in any of the enclosed documents, Borrower agrees as follows: If any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Workout, upon request of NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, the Borrower will comply with any request to execute, acknowledge, and deliver to NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER any documentation ("Replacement Documents") NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). The Borrower agrees to deliver the Replacement Documents within ten (10) days after receipt by the Borrower of a written request for such replacement.

**REQUEST BY NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER**: Any request under this Agreement made by NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, (including assignees and persons acting on behalf of NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER), shall be prima facie evidence of the necessity for the same. A written statement addressed to the Borrower, first class postage prepaid, at the mailing address indicated in our records shall be considered conclusive evidence of receipt by the Borrower of the request for Replacement Documents.

**BORROWER LIABILITY**: If the Borrower fails or refuses to execute, acknowledge, and deliver the Replacement Documents to NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER more than ten (10) days after being requested to do so by NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, the Borrower shall be liable for any and all loss or damage which NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER reasonably sustains thereby, including, but not limited to, all reasonable attorneys' fees and costs incurred by NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER. In addition, NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER may elect to declare the Workout null and void in which case the loan shall be payable at the rate and on the terms as existed prior to the Workout. Any funds received by NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER in conjunction with the Workout shall be retained by NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER and applied to the loan as determined by NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER in its discretion.

JEROME D BOYD AKA JEROME DONALD BOYD                    Execution Date: 0 4/ 22/ 22

Page **1** of **1**

Recording Requested By/Return To:
**NATIONSTAR MORTGAGE LLC**
**D/B/A MR. COOPER**
**999 TECH ROW, #200**
**MADISON HEIGHTS, MICHIGAN**
**48071**
**888-480-2432**

This Instrument Prepared By:
**NATIONSTAR MORTGAGE LLC**
**D/B/A MR. COOPER**
**8950 CYPRESS WATERS BLVD.**
**COPPELL, TX 75019**

**Parcel Identification Number:**

──────────────── [Space Above This Line For Recording Data] ────── ─────────

**Document Date: 04-18-2022**

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

**Property Address: 376 WILLOW**
**HEDGE DR, MONROEVILLE,**                              **Loan Number**
**PENNSYLVANIA 15146**                      **Primary VA Guaranteed Loan No.**

This Loan Modification Agreement ("Agreement"), effective on **1ST DAY OF JUNE, 2022**, between **JEROME D BOYD AKA JEROME DONALD BOYD** ("Borrower"), and **NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER** ("Lender"), whose address is **8950 CYPRESS WATERS BLVD., COPPELL, TX 75019** amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **MARCH 27, 2015** and recorded in **RECORDED DATE : 04/01/2015 BOOK : 44948 PAGE : 217 INSTRUMENT NUMBER : 2015-21481** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**376 WILLOW HEDGE DR, MONROEVILLE, PENNSYLVANIA 15146**

(Property Address)

the real property described being set forth as follows:
**LEGAL DESCRIPTION:**
**ALL THAT CERTAIN LOT OR PIECE OF GROUND SITUATE IN THE MUNICIPALITY OF MONROEVILLE, COUNTY OF ALLEGHENY AND COMMONWEALTH OF PENNSYLVANIA, BEING LOT NO. 24 IN THE WILLOW HEDGE PLAN OF LOTS AS THE SAME IS RECORDED IN THE DEPARTMENT OF REAL ESTATE OFFICE OF ALLEGHENY COUNTY, PENNSYLVANIA IN**

LOAN MODIFICATION AGREEMENT—Single Family—**Fannie Mae UNIFORM INSTRUMENT**          Form 3179   1/01
(rev. 4/14)

(page 1 of 10)

**Loan Number**

**PLAN BOOK VOLUME 93, PAGES 112-114. BEING THE SAME PREMISES WHICH ROBERT W. AMEN AND KEIGHTLEY J. AMEN, HUSBAND AND WIFE, BY DEED DATED 06/17/2009 AND RECORDED 06/22/2009 IN THE DEPARTMENT OF REAL ESTATE OFFICE OF ALLEGHENY COUNTY IN DEED BOOK VOLUME 13960, PAGE 479, GRANTED AND CONVEYED UNTO ROBERT W. AMEN AND KEIGHTLEY J. AMEN, HUSBAND AND WIFE AS TENANTS BY THE ENTIRETY.**
Modification Effective Date: **JUNE 01, 2022**
**Original Mortgage Amount: $229,500.00**

**Tax Parcel No.:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **JUNE 01, 2022**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$276,716.74**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.2500%** from **MAY 01, 2022**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,361.28**, beginning on the **1ST DAY OF JUNE, 2022**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **4.2500%** will remain in effect until principal and interest are paid in full. If on **MAY 01, 2052**, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. The terms in this paragraph shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however,

LOAN MODIFICATION AGREEMENT—Single Family—**Fannie Mae UNIFORM INSTRUMENT**      Form 3179   1/01
(rev. 4/14)

*(page 2 of 10)*

**Loan Number**

the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a)     all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b)     all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.   Borrower understands and agrees that:

(a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     If permitted by applicable law, all costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)     Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower's information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or

**LOAN MODIFICATION AGREEMENT**—Single Family—**Fannie Mae UNIFORM INSTRUMENT**     Form 3179   1/01
(rev. 4/14)

*(page 3 of 10)*

**Loan Number**

foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

☐ By checking this box, Borrower also consents to being contacted by text messaging.

(g)     Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender,

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT        Form 3179   1/01
(rev. 4/14)

*(page 4 of 10)*

**Loan Number**

Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

(h)  In any foreclosure action dismissed as a result of entering into this Agreement, Borrower will remain liable for and bear his or her own attorney fees and costs incurred in connection with such action, if permitted by applicable law.

(i)  The mortgage insurance premiums on Borrower's Loan may increase and the date on which Borrower may request cancellation of mortgage insurance may change as a result of the loan modification.

(j)  Any Borrower who co-signed the Security Instrument but did not execute the Note (a "Co-signer") and has not assumed the debt: (a) is co-signing this Agreement only to acknowledge the Agreement; (b) is not personally obligated to pay the sums secured by the Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Security Instrument or the Note without the Co-signer's consent.

6.  If Borrower is a Debtor in an active bankruptcy proceeding, Court and/or Bankruptcy Trustee approval of this modification agreement may be required depending upon jurisdictional requirements. If Court and/or Bankruptcy Trustee approval of the modification is required, the modification agreement will not be effective unless evidence of the required approval is provided.

LOAN MODIFICATION AGREEMENT—Single Family—**Fannie Mae UNIFORM INSTRUMENT**          Form 3179   1/01
(rev. 4/14)

*(page 5 of 10)*

**Loan Number**

7. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

LOAN MODIFICATION AGREEMENT—Single Family—**Fannie Mae UNIFORM INSTRUMENT**     Form 3179   1/01
(rev. 4/14)

**Loan Number**

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

**LOAN MODIFICATION AGREEMENT**—Single Family—**Fannie Mae UNIFORM INSTRUMENT**       Form 3179   1/01
(rev. 4/14)

*(page 7 of 10)*

**Loan Number** ▉▉▉▉▉

In Witness Whereof, the Borrower(s) have executed this agreement.

_Jim S Boyd AKA Jerome Donald Boyd_    Execution Date: 04 / 22 / 22

Borrower -    **JEROME D BOYD AKA JEROME DONALD BOYD**

State of **PENNSYLVANIA**
County of _Allegheny_
Enter County Here

On this, the _22nd_ day of _April_ _2022_, before me, the undersigned officer, personally appeared **JEROME D BOYD AKA JEROME DONALD BOYD**, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seals.

Place Seal Below

_James F Bulls_
Notary Signature

_James F Bulls_
Notary Printed Name

| Commonwealth of Pennsylvania - Notary Seal |
| JAMES F BULLS - Notary Public |
| Allegheny County |
| My Commission Expires December 17, 2025 |
| Commission Number 1317068 |

Title of Officer:  Notary Public

My Commission Expires: _12/17/25_

[ ] This notarial act involved the use of communication technology.

**LOAN MODIFICATION AGREEMENT**—Single Family—**Fannie Mae UNIFORM INSTRUMENT**    Form 3179  1/01
(rev. 4/14)

*(page 8 of 10)*

**Loan Number**

In Witness Whereof, the Lender has executed this Agreement.

Lender

**NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER**

By: _____

Printed Name:        Karren Bates
                     Vice President

Title: _____

                APR 2 8 2022

Execution Date: _____

LOAN MODIFICATION AGREEMENT—Single Family—**Fannie Mae UNIFORM INSTRUMENT**        Form 3179   1/01
(rev.  4/14)

*(page 9 of 10)*

**Loan Number**

State of MICHIGAN
County of OAKLAND

Acknowledged by _____ Karren Bates _____ , Vice President of Nationstar
Mortgage LLC d/b/a Mr. Cooper a Limited Liability Corporation before me on the _25_ day of
_Apr_ , 2022

Signature _____

Printed name _____ T HOUSWORTH _____

Notary public, State of MICHIGAN, County of Oakland

My commission expires _____ MAY 2 8 2026 _____

Acting in the County of OAKLAND

```
T HOUSWORTH
Notary Public, State Of Michigan
County of Oakland
My Commission Expires May 28, 2026
Acting in the County of ___Oakland___
```

**LOAN MODIFICATION AGREEMENT**—Single Family—**Fannie Mae UNIFORM INSTRUMENT**    Form 3179   1/01
(rev. 4/14)

*(page 10 of 10)*

## DOCUMENT CORRECTION AGREEMENT
("Agreement")

Loan Number: ▮▮▮▮▮▮▮ (the "Loan")

**AGREEMENT TO CORRECT MISSTATED DOCUMENTS AND TO PROVIDE ADDITIONAL DOCUMENTATION**: In consideration of NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER providing the loan modification (the "Workout") as requested by the undersigned ("Borrower"), and regardless of the reason for any loss, misplacement, or inaccuracy in any of the enclosed documents, Borrower agrees as follows: If any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Workout, upon request of NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, the Borrower will comply with any request to execute, acknowledge, and deliver to NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER any documentation ("Replacement Documents") NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). The Borrower agrees to deliver the Replacement Documents within ten (10) days after receipt by the Borrower of a written request for such replacement.

**REQUEST BY NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER**: Any request under this Agreement made by NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, (including assignees and persons acting on behalf of NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER), shall be prima facie evidence of the necessity for the same. A written statement addressed to the Borrower, first class postage prepaid, at the mailing address indicated in our records shall be considered conclusive evidence of receipt by the Borrower of the request for Replacement Documents.

**BORROWER LIABILITY**: If the Borrower fails or refuses to execute, acknowledge, and deliver the Replacement Documents to NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER more than ten (10) days after being requested to do so by NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, the Borrower shall be liable for any and all loss or damage which NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER reasonably sustains thereby, including, but not limited to, all reasonable attorneys' fees and costs incurred by NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER. In addition, NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER may elect to declare the Workout null and void in which case the loan shall be payable at the rate and on the terms as existed prior to the Workout. Any funds received by NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER in conjunction with the Workout shall be retained by NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER and applied to the loan as determined by NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER in its discretion.

_Jerome & Boyd AKA Jerome Donald Boyd_                Execution Date: 04/22/22

**JEROME D BOYD AKA JEROME DONALD BOYD**

Page 1 of 1